UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREAT NORTHERN INSURANCE COMPANY,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>WAUSAU UNDERWRITERS INSURANCE COMPANY, et al.,<br><br>　　　　　　　　　　Defendants. | Case No.: 17cv2493-L-LL<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

In this action alleging insurance breach of contract, Plaintiff filed a motion for partial summary judgment on the issue of duty to defend. Defendants opposed, and Plaintiff replied. The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L. R. 7.1(d.1). For the reasons stated below, Plaintiff's motion is granted.

**I.　BACKGROUND**

This action arises from a State court construction defect lawsuit styled *Lake Park Condominium Association, Inc. v. Nu Flow America, Inc., et al.*, where the plaintiff ("Lake Park") alleged that the defendant ("Nu Flow") was negligent and used defective products on a plumbing project at Lake Park condominiums. Nu Flow filed a cross-claim against Reliance Worldwide Corporation, Inc. ("Reliance"), one of the manufacturers of

1

the allegedly defective products. Reliance tendered the lawsuit to its insurers, Plaintiff and Defendants herein. Plaintiff funded the defense of Reliance and paid $ 1 million toward the settlement of the construction defect lawsuit. Defendants denied coverage and defense. Reliance assigned to Plaintiff its claims against Defendants, and Plaintiff filed this action. Plaintiff seeks damages and declaratory relief based on breach of duty to indemnify, breach of duty to defend, breach of the implied covenant of good faith and fair dealing, and equitable contribution. The Court has subject matter jurisdiction under 28 U.S.C. §1332.

## II. DISCUSSION

Pending before the Court is Plaintiff's motion for partial summary judgment regarding duty to defend. Federal Rule of Civil Procedure 56 empowers the Court to enter summary judgment on factually unsupported claims or defenses, or parts thereof, and thereby "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 327 (1986). Summary judgment or adjudication of issues is appropriate if depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c)(1).

A party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23.

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The

2

17cv2493-L-LL

mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . .. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor.

*Anderson*, 477 U.S. at 255.

Plaintiff, standing in the shoes of Reliance, the insured, contends it is entitled to summary adjudication of the issue that Defendants had a duty to defend Reliance in the construction defect lawsuit. State law applies to substantive issues in this diversity action. *See Intri-Plex Techs., Inc. v. Crest Gr., Inc.,* 499 F.3d 1048, 1052 (9th Cir. 2007); *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938). The parties agree that California law applies, rather than the law of Georgia, in which Reliance principally resides. (Opp'n (doc. no. 12) at 13.)[1] Under California law,

> Determination of the duty to defend depends, in the first instance, on a comparison between the allegations of the complaint and the terms of the policy. But the duty also exists where extrinsic facts known to the insurer suggest that the claim may be covered. Moreover, that the precise causes of action pled by the third-party complaint may fall outside policy coverage does not excuse the duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.

*Scottsdale Ins. Co. v. MV Transportation*, 36 Cal. 4th 643, 654 (2005) (citations omitted).

---

[1] Page references are assigned by the Court's Electronic Case Filing and Case Management System.

3

17cv2493-L-LL

1        The duty to defend is excused only where "the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage. *N. Am. Bldg. Maint., Inc. v. Fireman's Fund Ins. Co.*, 137 Cal. App. 4th 627, 640 (2006) (quoting *Montrose Chem. Corp. v. Super. Ct. (Can. Universal Ins. Co., Inc.),* 6 Cal. 4th 287, 300 (1993)) (internal quotation marks and brackets omitted). The duty is also excused if extrinsic facts exclude the possibility of coverage, "where the extrinsic facts eliminate the potential for coverage, . . . even when the bare allegations in the complaint suggest potential liability." *Waller v. Truck Ins. Exch., Inc.,* 11 Cal. 4th 1, 19 (1995).

       "While the duty to defend is broad, it is not unlimited; it is measured by the nature and kinds of risks covered by the policy." *Hartford Cas. Ins. Co. v. Swift Distribution, Inc.,* 59 Cal. 4th 277, 288 (2014) (internal quotation marks and citation omitted). "The insured has the burden of showing that the claim falls within the scope of coverage and the insurer has the burden of proving that an otherwise covered claim is barred by a policy exclusion." *Davis v. Farmers Ins. Group*, 134 Cal. App. 4th 100, 104 (2006).

       "[O]n a motion for summary judgment regarding its duty to defend, the insurer must be able to negate any potential coverage as a matter of law." *N. Am. Bldg. Maint.*, 137 Cal. App. 4th at 640. Consistently, the parties bear an asymmetrical burden:

> To prevail, the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential. In other words, the insured need only show that the underlying claim may fall within policy coverage; the insurer must prove it cannot. Facts merely tending to show that the claim is not covered, or may not be covered, but that are insufficient to eliminate the possibility that resultant damages (or nature of the action) will fall within the scope of coverage, therefore add no weight to the scales. Any seeming disparity in the respective burdens merely reflects the substantive law.

*Id*. at 637-38 (quoting *Montrose*, 6 Cal. 4th at 300)) (internal quotation marks and brackets omitted). "Any doubt as to whether the facts give rise to a duty to defend is resolved in the insured's favor." *Horace Mann Ins. Co. v. Barbara B.*, 4 Cal. 4th 1076, 1081 (1993). Accordingly, on a summary judgment motion, the insurer arguing it had no

4

duty to defend "faces an uphill battle from the beginning." *Hudson Ins. Co. v. Colony Ins. Co.*, 624 F.3d 1264, 1267 (9th Cir. 2010) (equitable contribution action).

Plaintiff argues that Defendants cannot conclusively establish that all damages potentially at issue in the construction defect lawsuit fall outside coverage or are otherwise excluded so as to excuse their duty to defend. Defendants counter by pointing to an investigation report prepared by Reliance prior to the policy inception date, the coverage limitations, and an exclusion endorsement in their policies. The facts underlying these arguments are undisputed, although the parties disagree on their legal significance.

According to the pleadings in the construction defect lawsuit (Pl.'s Ex. 1, 3 (docs. no. 10-5, 10-7)), Nu Flow was a contractor hired to reline and restore the piping system at Lake Park condominiums. The plumbing project covered 506 condominiums in 46 buildings. Reliance supplied Nu Flow with "SharkBite" self-sealing coupling fittings for use in the project. The project was completed in January 2009.

On August 26, 2009, Reliance received a request for investigation pursuant to the terms of its product warranty. The request concerned "[v]arious SharkBite push fit fittings" used at the Lake Park project, because "[a] leak was reported from this site [and] site investigation identified a number of fittings displaying degradation to the external plastic components . . .." (Pl.'s Ex. 5 (doc. no. 10-9) at 1.) On November 11, 2009, Reliance issued an investigation report ("Report") finding that "degradation to the plastic components had most likely been caused by external attack on the plastic components by corrosive agents." (*Id.*) The notes of the investigation state that the corrosion of external plastic components was uneven, and that one area showed "water staining on external surfaces of the fitting." (*Id.* at 2.) The investigator opined that "corrosion had been external and that it was unlikely that the corrosion had been due to leaking from the fitting itself." (*Id*. at 3; *see also id.* at 6 ("localised areas of corrosion to the copper pipe indicating that the supply may be corrosive," and "corrosion of the plastic component has in this case been due to external corrosive agents.").)

5

17cv2493-L-LL

In April 2014, Lake Park sued Nu Flow for property damage caused by leaks throughout the piping system as well as water and moisture intrusion into the various structures throughout the project. (Pl.'s Ex. 1 at 3.) Lake Park alleged that the damage was caused by faulty work as well as use of defective products, and included such product manufacturers among the Doe Defendants. (*Id.* at 3, 2.) The complaint states that the deficiency in the plumbing project was "latent," and "prior to the time when it was discovered by [Lake Park], it could not have been discovered by the exercise of reasonable diligence." (*Id.* at 10.) Lake Park asserted negligence, breach of contract and product liability claims.

On March 16, 2015, Nu Flow cross-claimed against Reliance and Elkhart Products Corporation ("Elkhart") for indemnity, contribution, negligence, breach of warranty and declaratory relief. Nu Flow alleged, among other things, that the property damage to Lake Park was caused by the faulty coupling fittings manufactured by Reliance and Elkhart, and that they "failed within one year of installation." (Pl's Ex. 3 at 3, 8.)

On May 28, 2015, Defendants denied Reliance's request for defense and coverage. (Pl.'s Ex. 6 (doc. no. 10-10).) Defendants had issued primary commercial general liability policies with the first policy starting on May 31, 2010. It is undisputed that the relevant provisions of all policies are the same. (*See* Opp'n at 8, 9.) Defendants contend that denial of defense was justified because the warranty investigation put Reliance on notice in 2009, prior to the inception of Defendants' first policy, of at least one discovered leak and degradation of plastic components of a number of its products. They concluded that by the terms of their policies, the property damage was deemed to occur in 2009, and was therefore not covered.

Defendants rely on the policies' insuring agreement, which provides in pertinent part:

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will

>have no duty to defend the insured against any "suit" seeking damages for . . . "property damage" to which this insurance does not apply. . . .

(Pl.'s Ex. 9 (doc. no. 10-15) at 29.)

The construction defect complaint alleges that the defective products used by Nu Flow and manufactured by others, including Reliance, "caused actual damage . . ., including . . . leaks throughout the piping systems . . . as well as water and moisture intrusion . . . ." (Pl.'s Ex. 1 at 3.) Nu Flow's cross-complaint alleges that such damage was primarily caused by Reliance and Elkhart. (Pl.'s Ex. 3 at 3.) Accordingly, the claims alleged against Reliance fall within the coverage provision of the insuring agreement.

However, the insuring agreement limits coverage in pertinent part as follows:

>b. This insurance applies to . . . "property damage" only if:
>
>[¶]
>
>(3) Prior to the policy period, no insured . . . knew that the . . . "property damage" had occurred, in whole or in part. If such . . . insured . . . knew, prior to the policy period that the . . . "property damage" occurred, then any continuation, change or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

(Pl.'s Ex. 9 at 29.) The policies further elaborate:

>d. ["P]roperty damage" will be deemed to have been known to have occurred at the earliest time when any insured . . . :
>
>[¶]
>
>(3) Becomes aware by any other means that . . . "property damage" has occurred or has begun to occur.

(*Id.* at 30.) Defendants argue that coverage is precluded by the foregoing limitations because the Report shows that Reliance knew in 2009 that damage had started to occur.

/ / / / /

7

The Report notes that a leak was reported at Lake Park condominiums and that a number of coupling fittings were displaying degradation to their external plastic components. (Pl.'s Ex. 5 at 1.) It concludes that "the degradation to the plastic components had most likely been caused by external attack on the plastic components by corrosive agents." (*Id.*) The attached photos with comments elaborate on the finding that the corrosive damage was external. (*See id.* at 2-6.) The investigator was permitted to perform destructive examination on one of the fittings, and concluded as to that fitting that "it was *unlikely* that the corrosion had been due to leaking from the fitting itself." (*Id.* at 3.) Water staining was noted "on external surfaces" of another fitting. (*Id.* at 2.) The investigator did not conclude that any of the fittings were leaking.

Defendants' coverage limitations require knowledge that the property damage had occurred, in whole or in part, or that it has begun to occur. (Pl.'s Ex. 9 at 29-30.) The policies define "property damage" as "[p]hysical injury to tangible property . . .." (*Id.* at 50.) Accordingly, what is necessary is knowledge of damage to Lake Park's property before the policy inception date.

"[C]overage exclusions and limitations are strictly construed against the insurer and liberally interpreted in favor of the insured." *Meraz v. Farmers Ins. Exch.,* 92 Cal. App. 4th 321, 324 (2001) (internal quotation marks and citations omitted). Although the Report may have put Reliance on notice of potential for damage, it did not find that Reliance fittings were leaking, and did not mention any actual damage to Lake Park property. The Court therefore cannot conclude that it eliminates all potential for coverage under Defendants' insuring agreement, as required to excuse the duty to defend. *See Waller,* 11 Cal. 4th at 11.

Defendants further argue that the damage to Lake Park property was "continuation, change or resumption" of the damage evidenced in the Report. Although leaky fittings undoubtedly can cause water and moisture intrusion to the surrounding structures, the Report did not find that Reliance fittings were leaking and did not evidence any damage to Lake Park property. In the context of duty to defend, "the insured need only show that

8

the underlying claim *may* fall within policy coverage; the insurer *must prove it cannot*." *Atl. Mut. Ins. Co. v. J. Lamb, Inc.,* 100 Cal. App. 4th 1017, 1038 (2002) (internal quotation marks and citation omitted, emphasis in original). Defendants' argument, unsupported by evidence on the issue of "continuation, change or resumption," is not sufficient to meet their burden to conclusively negate potential for coverage.

Alternatively, Defendants denied coverage based on the "Damage First Occurring Prior to Policy Period – Exclusion" endorsement. (*See* Opp'n at 23.) It is not clear whether Defendants oppose Plaintiff's motion based on this endorsement. (*See id.*) The endorsement provides,

> This insurance does not apply to . . ."property damage" within the "products-completed operations hazard" if the . . . damage first occurred prior to the effective date of this policy.

(Pl.'s Ex. 9 at 91.) In relevant part,

> Products-completed operations hazard [i]ncludes all . . . "property damage" occurring away from premises you own or rent and arising out of "your product" . . ..

(*Id*. at 49.) Accordingly, the endorsement could potentially exclude from coverage property damage, if the damage first occurred before the effective date of Defendants' policies. As with the coverage limitations, the Report does not provide conclusive evidence that any property damage to Lake Park arose from Reliance fittings or that it occurred prior to the effective date of the policies.[2]

/ / / / /

---

[2] Because the Court finds that neither the limitations in the insuring agreement nor the endorsement negate Defendants' duty to defend, the Court need not decide the issue raised by Plaintiff whether the endorsement conflicts with the insuring agreement.

9

## III. CONCLUSION

For the foregoing reasons, Defendants failed to negate the potential for coverage. Plaintiff's motion for partial summary judgment is granted. The Court finds that Defendants owed Reliance a duty to defend.

**IT IS SO ORDERED.**

Dated: March 29, 2019

_____
Hon. M. James Lorenz
United States District Judge